EXECUTION VERSION

**ASSIGNMENT OF CLAIM**

| **Sellers**: Ambrose Victor Regan and Alexander Nikolas Gierczyk | **Buyer**: Olympus Peak Trade Claims Opportunities Fund I Non-ECI Master LP |
|---|---|
| Address: <br>XXXXXXXXXXXXXXXXXXXXXXXXXXXXX <br>XXXXXXXXXX <br>Attn:    v <br>Tel:    +XXXXXX5860 <br>Email:  XXXXXXX@gmail.com | Address: <br>177 West Putnam Avenue, Suite 2262-S1 <br>Greenwich, CT 06831 <br>Attn:   Leah Silverman <br>Tel:    (212) 373-1189 <br>Email:  lsilverman@opeaklp.com |
| **Debtor**: FTX Trading Ltd. | **Case**: In re: FTX TRADING LTD., et al., as debtors, Case No. 22-11068 (JTD) (Jointly Administered) |
| **Bankruptcy Court**: District of Delaware | **Petition Date**: November 11, 2022 |
| **Claim**: The customer account claims of Sellers (Customer ID No.: **01086571**) filed in the name of Ambrose Victor Regan in the Claim Amount against the Debtor in the Case as evidenced by the claim details set forth in Annex C (the "Claim Details") and the additional Claim Documents (as defined below). | **Claim Amount**: $1,587,772.06 |

1. Purchase and Sale.    By this Assignment of Claim Agreement (the "Assignment"), Sellers, for the Purchase Price (defined in Annex A) and other good and valuable consideration, the sufficiency of which Sellers hereby acknowledge, absolutely and unconditionally sell, transfer and assign to Buyer and its successors and assigns, and Buyer does hereby irrevocably purchase and acquire from Sellers all of Sellers' rights, title and interest in, to and under the Claim including, without limitation, all of Sellers' rights, title and interest in, to and under:

(a) the Proof of Claim (defined below) and the claims listed by Debtor on its bankruptcy schedules and/or amendments thereto ("Schedule") and all exhibits, attachments and/or supporting documentation related thereto;

(b) all agreements, instruments, invoices, account documents, screen shots and other documents (whether now existing or hereafter arising) that evidence, create and/or give rise to or affect the Claim including without limitation, the Claim Details (all such documents, agreements and/or other documents collectively hereinafter referred to as the "Claim Documents" and are listed on or attached hereto as Exhibit A);

(c) all causes of action, claims or other rights held by Sellers, whether against Debtor and/or any guarantors or against any other party, including but not limited to voting and other similar rights, arising under the Claim or relating to any of the foregoing, including, without limitation, the Claim Documents;

(d) any forfeiture fund established or to be established pursuant to 28 C.F.R. Part 9 or otherwise or any other restitution, remission, restoration or mitigation processes or funds (or like processes or funds) or any other fund operated or administered by (or on behalf of) any entity, governmental or otherwise, (including, without limitation, the U.S. DOJ) foreign or domestic;

(e) all rights to receive any crypto currency or crypto or other digital asset of any kind, principal, interest, cash, coins, tokens, administrative priority claims, fees, expenses, damages, penalties and other amounts or property in respect of or in connection with the Claim;

(f) any and all crypto currency or crypto or other digital asset of any kind, cash, coins, tokens, securities or other property ("Distributions") distributed or payable on account of, or exchanged in return for, any of the foregoing, whether prior to, on, or after the date hereof;

(g) any ownership, possessory or other interests, rights or claims whether arising from legal title, statutory or equitable trust or otherwise, and all other rights of Sellers in connection with the assets or claims referenced in, or in connection with, the Claim Documents, including without limitation all rights to receive any cash, coins, tokens, digital assets, interest, penalties, fees, damages and/or other amounts received in respect of or in connection with the such interests; and

(h) any and all proceeds of any of the foregoing;

all of the foregoing, whether against the Debtor and/or any guarantors, any affiliate thereof, any guarantor or any other third party liable in respect thereof, being collectively referred to herein as the "Transferred Rights".

Notwithstanding anything to the contrary, Buyer is not assuming any obligations or liabilities of Sellers or any of their affiliates or other related persons or entities, including but not limited to, any obligations or liabilities relating to or resulting from (i) any avoidance actions other than with respect to a "Preference Risk" (as such term is defined in Section 7 below), including but not limited to, fraudulent conveyance liability or obligation, or any other similar liability or obligation under applicable law, (ii) Sellers' breach of their representations, warranties, covenants, or agreements under this Assignment (and all other related documents), (iii) Sellers' bad faith, gross negligence, or willful misconduct or (iv) the Claim Documents, the Claim, the Transferred Rights or any other relationships, dealings or agreements of Sellers with the Debtor or any of its affiliates, officers, directors, employees, agents or representatives (the foregoing clauses (i) through (iv), the "Non-assumed Obligations").  For the avoidance of doubt, Buyer is assuming and shall be responsible for any obligations or liabilities in connection with a Preference Risk, including legal costs expended at Buyer's direction to defend the Claim against disallowance or the repayment of a settlement amount to the Debtors at Buyer's direction to avoid disallowance of the Claim.

Notwithstanding anything set forth in this Agreement to the contrary, Sellers and Buyer hereby agree that, if the assignment or participation of the Transferred Claim is objected to, rejected, avoided or otherwise not recognized by the Debtors, any other person or entity or a court of competent jurisdiction as a valid transfer for any reason whatsoever, then Sellers and Buyer agree to enter into such other alternative structure or other arrangement that affords Sellers and Buyer the economic equivalent of the agreed-upon Transaction set forth herein.

Each of the parties hereto acknowledges that this Assignment is an agreement for the purchase and sale of the Transferred Rights and that the transactions contemplated hereby shall in no event be deemed or otherwise construed to be a financing or any other extension of credit by the Buyer to Sellers.  This Assignment is intended to and shall affect a true sale of the Transferred Rights, and no party will take a position on any financial statement, tax return or other document, whether before any governmental agency, in any judicial proceeding, or otherwise, that is in any way inconsistent with the treatment of the transactions contemplated hereby as a true sale of the Transferred Rights.  The relationship between Sellers, on the one hand, and the Buyer, on the other, is that of seller and purchaser and shall in no event be deemed or otherwise construed to be that of debtor and creditor.

2. Proof of Claim.    Sellers hereby represent, warrant and covenant to Buyer that a Proof of Claim (the "Proof of Claim") with respect to the Claim was duly authorized and executed by Ambrose Victor Regan and filed in the Bankruptcy Case.

3. Conditions to Closing and Payment of Purchase Price.  (a)  Buyer's obligations to pay the Purchase Price to Sellers and for Buyer to acquire the Transferred Rights shall be subject to the following conditions:

(i) Sellers' representations and warranties set forth in this Agreement shall be true and correct in all respects as of the Closing Date;
(ii) Buyer shall have received this Agreement duly executed and delivered by each of the Sellers;
(iii) Ambrose Victor Regan shall have filed with the Bankruptcy Case an amendment (in form and substance reasonably acceptable to Buyer to the original Proof of Claim filed by him with the Bankruptcy Court in respect of the Claim;
(iv) Buyer having received all documentation and other information that Buyer reasonably requests which is required to comply with Buyer's ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act; and
(v) Ambrose Victor Regan shall have (a) accessed the FTX Customer Claims Portal at https://claims.ftx.com/ (the "Portal"), (b) verified his email address, (c) successfully verified his identity through the Portal's "know your customer" verification process, (d) such Portal account has been transferred from him to Buyer and (e) confirmed that the account balance shown on the Portal is accurate.

(b) Subject to the Buyer's verification of Sellers' representations and warranties set forth in this Assignment, Buyer shall pay LIFE-FX PRODUCTS LLC, the duly authorized agent and representative of Sellers, the Purchase Price specified on Annex A hereto, which shall be equal to the product of the Claim Amount multiplied by the Purchase Rate specified on Annex A hereto, by wire transfer of immediately available funds to such account specified on Annex A hereto (the date of such payment

being the "Closing Date").  Buyer's obligation to pay the Purchase Price shall be subject to Buyer having received all documentation and other information that Buyer reasonably requests which is required to comply with Buyer's ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act.

(c)     If the Claim is ultimately allowed as a non-contingent, liquidated, undisputed, and unsubordinated claim by a final, non-appealable, order of the Bankruptcy Court (a "Final Order") that is entitled to receive, with respect to manner, timing and pro-rata amounts, such distributions and other payments that are identical to the distributions and other payments that customer account claims of the type of Sellers' Claim are entitled to receive against the Debtor in an amount that is greater than the Claim Amount (such additional amount is the "Excess Claim Amount"), Buyer will purchase such Excess Claim Amount by paying, within ten (10) business days of: (a) Buyer's receipt of such Final Order; or (b) Buyer's receipt of Distributions on the Excess Claim Amount, an amount equal to the Excess Claim Amount multiplied by the Purchase Rate.  By accepting payment for the Excess Claim Amount, Sellers will thereby reaffirm, as of the date of such payment, all representations, warranties and covenants in this Assignment.

4. Sellers' Representatives, Warranties and Covenants.   Each Seller further represents, warrants and covenants to Buyer (as of the Assignment Date and as of the Closing Date) that:

(a) the Claim is a valid, allowed, enforceable, liquidated, undisputed, non-contingent  and undisputed customer account claim against the Debtor, in an aggregate amount not less than the Claim Amount and the Transferred Rights are not now, and will not be deemed invalid, disallowed, void, disputed or subject to any objection, reservation of rights, counterclaim, defense or claim or right of setoff, reduction, recoupment, impairment, avoidance, disallowance, or subordination or equitable subordination (whether by lien, contract, court order or otherwise) (any of the above, a "Disallowance");

(b) except for the filing of the Evidence of Transfer (defined below) with the Bankruptcy Court, no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment by Sellers;

(c) this Assignment has been duly authorized, executed and delivered by such Seller and such Seller has the requisite power and authority to execute, deliver and perform this Assignment;

(d) this Assignment constitutes the valid, legal and binding agreement of Sellers, enforceable against Sellers in accordance with its terms;

(e) each Seller is solvent, is able to pay its debts as they become due, and has not filed a petition seeking protection under the United States Bankruptcy Code ("Code"), or any other insolvency statue in any jurisdiction;

(f) no payment or other distributions have been received by either Seller, or by any third party on behalf of either Seller, in full or partial satisfaction of, or in connection with, the Transferred Rights;

(g) neither Seller received any payments, security interests or other transfers from Debtor during the 91 days prior to the Petition Date;

(h) set forth on Annex E hereto is a true, correct and complete list of all deposits, made to or withdrawals made from Sellers' customer account(s) with the Debtor (in the form, amount and type of any of the foregoing) since the dates of the inception of the account(s);

(i) neither Seller holds, and did not on the Petition Date hold, any funds or property of or owe any amounts or property to the Debtor or any of its affiliates and has not affected or received, and shall not affect or receive, the benefit of any setoff against the Debtor or any of its affiliates;

(j) no portion of the Transferred Rights has been sold, assigned, pledged, or otherwise transferred, to any third party in whole or in part nor have Sellers agreed to do any of the foregoing, and Sellers are the original holders of the Claim;

(k) Sellers own and have and are hereby selling to Buyer good and sole legal beneficial and marketable title to the Transferred Rights, free and clear of (x) any legal, regulatory or contractual restriction on transfer or resale, (y) any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever and (z) any and all taxes, imposts, duties of any kind;

(l) no creditors of either Seller has asserted in writing, nor is there a valid basis for them to assert, an interest of any kind in or to the Transferred Rights, or any portion thereof;

(m) the basis for the Claim is accurately and completely set forth in the Claim Documents;

(n) Sellers have complied with, and has performed, all of its obligations to Debtor required to be complied with or performed under, and has not breached any terms or provisions of the Claim Documents;

(o) Sellers have provided to Buyer true, correct and complete copies of all of the Claim Documents (including any amendments, revisions, restatements or modifications thereto) and other than the Claim Documents provided by Sellers to Buyer, there are no other agreements, documents, stipulations or orders, of any kind or nature whatsoever, that could materially and adversely affect the Transferred Rights or Buyer's rights and remedies hereunder;

(p) neither Sellers nor Buyer will be subject to tax withholding on any Distributions on the Claim by or on behalf of a government entity;

(q) no objection to the Claim has been filed or threatened;

(r) all actions required under applicable law, rules and orders of the Bankruptcy Court, including, without limitation, filing and/or serving required documents, have been properly taken on a timely basis;

(s) neither Seller has engaged (and will not engage) in any act, conduct or omission, or had (and will not have) any relationship with the Debtor or any of its affiliates that will reduce or impair or otherwise adversely affect the Transferred Rights or result in Buyer receiving proportionately less Distributions, or less favorable treatment (including the manner or timing of Distributions) in respect of the Transferred Rights than is received by creditors holding allowed claims of the same class or type as the Claim against the Debtor in the Case;

(t) no proceedings or claims are pending against either Seller or, to the best of such Seller's knowledge, threatened against either Seller before any relevant governmental authority that, in the aggregate, could materially and adversely affect the Transferred Rights or any action taken or to be taken by Sellers under this Assignment;

(u) Sellers have not received any written notice that the Transferred Rights or any portion thereof is void, voidable or unenforceable;

(v) such Seller is not, and never has been, "insolvent" within the meaning of Section 1-201(23) of the Uniform Commercial Code (as in effect in the State of New York), Section 101(32) of the U.S. Bankruptcy Code, or any analogous provision any non-U.S. law to which Seller may be subject, and Seller has not (i) filed a petition seeking protection under the insolvency laws of any jurisdiction or (ii) admitted its inability to, or failed to, pay its debts generally as they become due, nor does Seller have the intention to do any of the foregoing.

(w) Neither Seller, nor either Seller's digital wallet and FTX trading account that is the basis of this Claim, is: (i) listed on a sanctions list administered or enforced by the U.S. Department of the Treasury's Office of Foreign Assets Control, the U.S. State Department, the United Nations Security Council, the European Union, United Kingdom, or other relevant sanctions authority (collectively, "<u>Sanctions Authority</u>"), each as amended, supplemented or substituted from time to time ("<u>Sanctions List</u>"); (ii) resident or located in, operating from, or organized under the laws of, any country or other territory subject to a comprehensive economic and trade sanctions, which, as of the date hereof, consists of Cuba, Iran, North Korea, Syria, and the Crimea, Donetsk and Luhansk regions of Ukraine ("<u>Sanctioned Country</u>"); (iii) an agency or instrumentality of a government of a Sanctioned Country; (iv) owned or controlled, directly or indirectly, by any person described in the foregoing clauses (i), (ii), (iii); or (v) otherwise the subject of economic, trade, or financial sanctions, requirements, or embargoes imposed, administered, or enforced from time to time by any Sanctions Authority (collectively any such person described in any of the foregoing clauses (i) through (v), a "<u>Sanctioned Person</u>").

(x) the Claim and other Transferred Rights were not derived from or related to any Sanctioned Persons or unlawful activities, and neither Seller is engaged in the transactions described herein on behalf of or for the benefit of a Sanctioned Person, or to finance or facilitate any unlawful activities, including but not limited to money laundering or terrorist financing or any activity in violation of economic or financial sanctions laws administered or enforced by a Sanctions Authority.

5. <u>Mutual Representations and Acknowledgments</u>. Each of Buyer and Sellers represents and warrants to the other that it (i) is a sophisticated entity with respect to the sale or purchase, as the case may be, of the Transferred Rights, (ii) is able to bear the economic risk associated with the sale or purchase, as the case may be, of the Transferred Rights, (iii) has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale or purchase, as the case may be, of the Transferred Rights, (iv) has agreed to the Purchase Price based on its own independent investigation and credit determination and has consulted with such advisors as it believes appropriate and has not relied on any representations made by the other party hereto, (v) is aware that information which may be pertinent to its decision to sell or buy, as the case may be, the Transferred Rights is publicly available, (vi) is aware that the Purchase Price being paid by Buyer hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization confirmed for Debtor; (v) acknowledges that the Purchase Price constitutes fair value for the Transferred Rights as of the Closing Date.

KL2 3321225.3

6. <u>Seller Excluded Information.</u>    Sellers acknowledge and agree that: (a) Buyer currently may have, and later may come into possession of, information relating to the Debtor that is not known to Sellers and that such information may be material to Seller's decision to assign the Transferred Rights to Buyer including information received by Buyer by Buyer's participation as a member of an ad-hoc group of creditors ("<u>Seller Excluded Information</u>"); (b) Sellers have determined to assign the Transferred Rights notwithstanding its lack of knowledge of Seller Excluded Information; (c) Buyer will have no liability to either of the Sellers; and (d) each Seller waives and releases any claims that it might have against Buyer with respect to the non-disclosure of Seller Excluded Information.

7. <u>Claim Disallowance.</u>    If all or any portion of the Transferred Rights is: (a) objected to; (b) not enforceable against the Debtor; (c) impaired by the commencement or notice from Debtor of any action or proceeding, including but not limited to any proceeding which seeks to reduce all or part of the Claim Amount or provide less favorable treatment to the Transferred Rights than other claims of the same class or type as the Claim, including the timing of Distributions; (d) setoff, disallowed, reduced, subordinated, subject to a preference action, or otherwise impaired, in whole or in part, in the Case for any reason whatsoever, including, without limitation, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed); (e) is not listed on the Schedule (notwithstanding the filing of the Proof of Claim), or is listed on the Schedule as unliquidated, contingent or disputed, or is listed on the Schedule in a lesser amount than the Claim Amount; (f) if the Bankruptcy Court enters an order disapproving the transfer of the Transferred Rights, or (g) in the event that the Buyer is not substituted for Sellers <u>except,</u> in any instance, in respect of an avoidance action maintained by the Debtors or any other party-in-interest in the Case under the Code of any withdrawal amounts listed on <u>Annex E</u> hereto (a "<u>Preference Risk</u>") (items (a) through (g) collectively, an "<u>Impairment</u>"),Sellers shall repurchase all or a portion of the Transferred Rights subject to an Impairment by paying Buyer, within ten (10) business days after Sellers' receipt of a written demand from Buyer, cash, in an amount equal to the portion of the Claim Amount subject to Impairment multiplied by the Purchase Rate, plus interest thereon at 5% per annum from the Assignment Date to the date of Sellers' repayment to Buyer, <u>provided</u>, <u>however</u>, that Buyer's enforcement of its rights pursuant to this Section 7 is not exclusive and shall not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law.  Notwithstanding, anything to the contrary herein, Buyer agrees that Sellers shall have the right at Sellers' sole cost and expense, to remedy or cure an Impairment (but Sellers may not agree to settle or compromise the Transferred Rights or any portion thereof without the consent of Buyer) for a period of twenty (20) days after the occurrence of such Impairment, it being understood that Sellers' rights under this Section 7 shall expire at the end of such twenty (20) day time period, at which point Sellers shall repurchase the Claim Amount subject to the Impairment in accordance with terms set forth herein.

8. <u>Notices and Distributions</u>.    If Sellers receive any Distributions or notices with respect to or relating to the Transferred Rights, Sellers agree to: (a) accept the same as Buyer's agent; (b) hold the same in trust on behalf of and for the sole benefit of Buyer; (c) notify Buyer, at the address identified on page 1 of this Assignment, of receipt of Distributions or notices; (d) deliver the same forthwith to Buyer in the same form and type received (free of any withholding, set-off, claim or deduction of any kind) with the endorsement of Sellers or documents necessary to transfer such property (without recourse) where necessary as appropriate (e) in the case of cash or digital assets ("<u>Cash Distribution</u>"), promptly deliver the same to Buyer, within two (2) business days via wire to an account that will be provided to Sellers upon request and ten (10) business days in the case of non-cash Distributions.  If Sellers fail to deliver the Cash Distribution to Buyer within two (2) business days of receipt, Sellers will be obligated to pay Buyer interest on the Cash Distribution at 10% per annum, from the date of Sellers' receipt to the date of Buyer's receipt, provided, however, this interest accrual will not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law.  Sellers agree to promptly provide Buyer, with copies of all correspondence with respect to the Transferred Rights, including but not limited to any notices received from Debtor. Sellers agree to promptly and fully follow Buyer's instructions regarding any notices. All demands, notices, requests, consents, and communications hereunder will be in writing and will be deemed to have been duly given if personally delivered by courier service, messenger or email at the address specified on page 1 of this Assignment.

9. <u>Indemnification and Remedies</u>.    Each Seller hereby agrees to indemnify, defend and hold Buyer and Buyer's respective officers, directors, employees, partners, members, shareholders, agents and controlling persons and their respective successors and assigns harmless from and against any and all expenses, losses, damages, suits, claims, proceedings, objections and liabilities (collectively, "<u>Losses</u>"), including, without limitation, attorneys' fees and expenses up to $5,000, which result from, or arise out of, (i) any Impairment of the Claim resulting from a willful misrepresentation or deliberate omission by Sellers; (ii) a Seller's knowingly breach any of its representations, warranties or covenants set forth herein, (iii) any obligation of a Seller or Buyer to disgorge, in whole or in part, or otherwise reimburse Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received or applied by or for the account of either Seller in connection with the Transferred Rights from, against or effected by or on account of Debtor or any person or entity obligation in respect thereof, including, without limitation, reimbursement (by setoff or otherwise) for any obligation arising under or related to the Transferred Rights or any agreement related to the foregoing other than with respect to Preference Risk  or (iv) Non-Assumed Obligations explicitly laid out in this Agreement; <u>provided, howeve</u>r, the parties hereto agree that in the event Sellers are obligated to repurchase all or a portion of the Transferred Rights under Section 7 hereof or either Seller is obligated to indemnify Buyer under this Section 9, the obligation of the Sellers under such Sections hereof shall be several and not joint, and Ambrose Victor Regan's share of such total liability shall be 15.579%, and Alexander Nikolas Gierczyk's share of such total liability shall be 84.421%.

KL2 3321225.3

10. <u>Attorney-in Fact; Prosecuting and Defending the Transferred Rights and Voting</u>.  Pursuant to the document attached hereto as <u>Annex D,</u> Sellers hereby irrevocably appoints Buyer with full authority and power of substitution as their true and lawful attorney and authorizes Buyer to: (a) act in Sellers' name, place and stead (including but not limited to commencing any actions to prosecute and/or defend the Transferred Rights against any objection, dispute or litigation that may be filed or commenced in respect thereof); (b) demand, compromise, recover, and transfer to Buyer all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Claim; (c) do all things necessary to enforce or compromise the Claim and Sellers' rights thereunder or related thereto pursuant to this Assignment; (d) provide Sellers' tax information required for Distributions; and (e) vote on any question relating to the Claim in the Case. Sellers agree that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer.

11. <u>Evidence of Transfer</u>.  The document attached hereto as <u>Annex B</u> and incorporated herein by reference ("<u>Evidence of Transfer</u>") may be filed by Buyer with the Bankruptcy Court as evidence of this Assignment. Sellers agree that Buyer may make corrections to the Evidence of Transfer that Buyer deems reasonably necessary or appropriate to affect this Assignment. Sellers waive any notice or hearing requirements imposed by Federal Rule of Bankruptcy Procedure 3001, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Buyer as the valid owner of the Transferred Rights.  Buyer will have no obligation to take any action to prove, defend, demand or take any action with respect to the Transferred Rights or otherwise in the Case. Sellers agree to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be necessary or appropriate to affect this Assignment and to fully assist Buyer in enforcing the Transferred Rights and to otherwise effectuate the intent of this Assignment.

12. **BUYER AND SELLERS IRREVOCABLY AGREE THAT ANY ACTION TO ENFORCE, INTERPRET, OR CONSTRUE ANY PROVISION OF THIS ASSIGNMENT WILL BE BROUGHT AND DETERMINED ONLY IN A STATE OR FEDERAL COURT LOCATED IN THE CITY AND COUNTY OF NEW YORK, EXCEPT NOT IN THE BANKRUPTCY COURT ("<u>NEW YORK COURTS</u>").  BUYER AND SELLERS IRREVOCABLY AND UNCONDITIONALLY CONSENT TO THE PERSONAL JURISDICTION OF THE NEW YORK COURTS IN ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISION OF THIS ASSIGNMENT, AND ALSO HEREBY IRREVOCABLY WAIVES: (A) TRIAL BY JURY; (B) ANY DEFENSE OF IMPROPER VENUE; OR (C) *FORUM NON CONVENIENS*, TO ANY SUCH ACTION BROUGHT IN THE NEW YORK COURTS.  THIS ASSIGNMENT AND ALL MATTERS ARISING OUT OF OR RELATING TO IT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PROVISIONS THAT WOULD REQUIRE OR PERMIT THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.**

13. <u>Confidentiality</u>.   Each party to this Assignment agrees that, without the prior written consent of the other party hereto, it will not disclose the contents of this Assignment to any person or entity, except that any party may make any such disclosure: (a) contemplated by this Assignment; (b) if required to do so by any law, court, or regulation; (c) to any banking, regulatory, self-regulatory, or examining authority; (d) to its affiliates, employees, professional advisors, and auditors (provided that each such person or entity is instructed to keep such disclosed information confidential); or (e) in the case of Buyer, to any actual or prospective, assignee, or participant in respect of the Transferred Rights or any portion thereof.

14. <u>Further Transfers</u>.  Sellers hereby acknowledge and agree that (i) Buyer may at any time re-assign, participate, or otherwise transfer the legal, economic and/or the beneficial interest in the Transferred Rights or any portion thereof, together with all right, title, and interest of Buyer, in and to this Assignment or delegate any of its rights or obligations hereunder or any portion hereof without the prior written consent of Sellers, and (ii) Sellers may not re-assign, participate, or otherwise transfer the legal, economic and/or beneficial interest in the Transferred Rights or Sellers' obligations hereunder without the prior written consent of Buyer.

15. <u>Miscellaneous</u>.   All representations, warranties, covenants and agreements contained herein will survive the execution and delivery of this Assignment and the purchase and sale of the Claim and will inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns.  This Assignment: (a) if executed and delivered via email in a pdf format with electronic signatures (if applicable) will constitute an original and will bear the same binding effect as any original signatures; (b) may be executed in two or more counterparts, each of which will be deemed to be an original and all of which, when taken together, will constitute one and the same document; (c) will be read and interpreted according to its plain meaning and any ambiguity will not be construed against either party; and (d) constitutes the entire understanding (including the annexes, and other documents incorporated into this Assignment by express reference) among Buyer and Sellers and supersedes all prior agreements (oral and written) between the parties.  The parties expressly agree that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof will not apply to any provision of this Assignment. All rights, powers, and remedies provided under this Assignment or otherwise available in respect hereof at law or in equity will be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any party will not preclude the simultaneous or later exercise of any other such right, power or remedy by such party or any other party. Except as expressly set forth in Section 7, each of Sellers and Buyer shall be solely responsible for all costs and expenses (including attorneys' fees and costs) incurred by it with respect to the negotiation, preparation and execution of this Assignment.

KL2 3321225.3

IN WITNESS WHEREOF, each of the undersigned has duly executed this Assignment by its duly authorized representative dated November 13 , 2023 ("Assignment Date").

Sellers:

Ambrose Victor Regan

By: _____
Name: Ambrose Victor Regan
Title: Account Holder

Alexander Nikolas Gierczyk

By: _____
Name: Alexander Nikolas Gierczyk
Title: Account Holder

Buyer:

Olympus Peak Trade Claims Opportunities Fund I Non-ECI Master LP

By: Olympus Peak Asset Management LP, its Investment Manager

By: _____
Name: Leah Silverman
Title: Authorized Signatory

KL2 3321225.3

EXHIBIT A

**LIST OF CLAIM DOCUMENTS**

| Customer Code | Contingent, Unliquidated, or Disputed Indicator | Total Crypto Token / Fiat / NFT [Quantity/NFT ID] | Earn Indicator | Token / Fiat In Lend |
|---|---|---|---|---|
| 01086571 | | ALPHA-PERP[0], AR-PERP[0], BTC[0.00004067], BTC-20210924[0], BTC-PERP[0], DOGE-PERP[0], DOT-20210625[0], DOT-PERP[0], ETH[.00924], ETH-0624[0], ETH-0930[0], ETH-1230[0], ETH-20210625[0], ETH-20210924[0], ETH-PERP[0], ETHW[.00924], FTT-PERP[0], GBP[0.29], MATIC[-1.91273688], MATIC-PERP[0], SOL-PERP[0], TRX[28474862.84858985], USD[0.52], USDT[0.00582917] | | |

KL2 3321225.3

Annex A

**PURCHASE PRICE**

Upon settlement of this transaction, subject to Buyer's verification of Sellers' representations and warranties made herein, payment of the Purchase Price will be made to Sellers' representative as follows:

| | |
|---|---|
| Claim Amount: | $1,587,772.06 |
| x Purchase Rate: | 42% |
| | --------------------------- |
| Purchase Price: | $ 666,864.27 |
| | =============== |

Wire Transfer Instructions of Sellers' Representative (based in the United States):

Bank of America
100 North Tryon Street, Charlotte, North Carolina, 28255, USA
Beneficiary Account Number: XXXXX2184
Beneficiary Routing Number: XXX9593 (ABA, wires)  SWIFT Code: XXXUS3N
Beneficiary Name: LIFE-FX PRODUCTS LLC
Beneficiary Address: 362 Binscarth Rd, Los Osos, CA, 93402, USA
Phone: +1 713 501 0251

Annex B

**EVIDENCE OF TRANSFER OF CLAIM**

TO: U.S. Bankruptcy Court
District of Delaware ("Court")

AND TO: FTX Trading Ltd. ("Debtor")
Case No. 22-11068 ("Case")

Proof of Claim Confirmation ID: 3265-70-TQVXY-390374719
Proof of Claim No.: 62556

Ambrose Victor Regan, acting for himself and for Alexander Nikolas Gierczyk (collectively, "Seller"), for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto **Olympus Peak Trade Claims Opportunities Fund I Non-ECI Master LP** and its successors and assigns ("Buyer"), all rights, title and interest in and to the claim of Seller, including all rights: (a) of reclamation and all administrative priority claims, and any cure payments made on account of Seller in the Case; (b) to any proof(s) of claim filed; (c) in and to any secured claim, collateral or any liens held by Seller; (d) to vote on any question relating to the claim in the Case; (e) to cash, interest, principal, securities or other property in connection with the Case: and (f) to any amounts listed on Debtor's schedules, in the principal amount of $1,587,772.06 ("Claim"), which represents 100% of the total claim amount of $1,587,772.06 against Debtor in the Court, or any other court with jurisdiction over Debtor's Case.

Seller hereby waives: (a) any objection to the transfer of the Claim to Buyer on the books and records of Debtor and the Court; and (b) any notice or right to a hearing as may be imposed by Federal Rule of Bankruptcy Procedure 3001, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands, agrees, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring the Claim to Buyer and recognizing Buyer as the sole owner and holder of the Claim.

Buyer does not assume and will not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. You are hereby directed to make all future payments and distributions free and clear of all setoffs and deductions, and to give all notices and other communications in respect of the Claim to Buyer.

IN WITNESS WHEREOF, each of the undersigned have duly executed this Evidence of Transfer of Claim by their duly authorized representative dated November 13, 2023.

Ambrose Victor Regan

By: _/s/ Ambrose Victor Regan_
Name: Ambrose Victor Regan
Title: Account Holder

Alexander Nikolas Gierczyk

By: _/s/ Alex Gierczyk_
Name: Alexander Nikolas Gierczyk
Title: Account Holder

Olympus Peak Trade Claims Opportunities
Fund I Non-ECI Master LP

By: Olympus Peak Asset Management LP, its
Investment Manager

By: _/s/ Leah Silverman_
Name: Leah Silverman
Title: Authorized Signatory

KL2 3321225.3

Annex C

**CLAIM DETAILS**

| Digital Asset or Fiat Currency Held | Amount | Cash Value (USD, As of November 11, 2022) | Exchange (FTX US, FTX.com) | Account No. | Electronic Submission Confirmation ID | Proof of Claim No: |
|---|---|---|---|---|---|---|
| TRX | 28,474,882.848589850 | $1,587,759.47 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH | 0.00924000 | $11.90 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| BTC | 0.00004067183815 | $0.69 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| USD | 0.524862543496633 | $0.52 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETHW | 0.009240000 | $0.04 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| USDT | 0.0058291711830169 | $0.01 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-20210924 | 00.000000000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| SOL-PERP | -0.0000000000009095 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| MATIC-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| GBP | 0.287500000 | $0.34 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| FTT-PERP | -0.000000000001819 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ALPHA-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| AR-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-1230 | -0.0000000000000075 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-0930 | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-0624 | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| DOT-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| DOT-20210625 | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| DOGE-PERP | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| BTC-PERP | -0.0000000000000005 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| BTC-20210924 | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| ETH-20210625 | 0.0000 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |
| MATIC | -1.9127368829763438 | $0.00 | FTX.com | 23207402 | 3265-70-TQVXY-390374719 | 62556 |

KL2 3321225.3

**NOTICE OF CHANGE OF
PHYSICAL MAILING ADDRESS, and
EMAIL ADDRESS**

November 13, 2023

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004-2498
Attn: Andrew G. Dietderich

Re: FTX Trading Ltd., Case No. 22-11068,
Proof of Claim Confirmation ID: 3265-70-TQVXY-390374719
Proof of Claim No.: 62556

To Whom It May Concern:

Effective immediately, all future notices, payments, remittances, and disbursements concerning above-referenced claims should be sent to the following physical address, and email address: Olympus Peak Trade Claims Opportunities Fund I Non-ECI Master LP, c/o Olympus Peak Asset Management LP, 177 West Putnam Ave , Suite 2622-S1, Greenwich, CT 06831, Attn: Leah Silverman, Tel: (212) 373-1165 and Email: finops@opeaklp.com.

You are hereby directed to send all future distributions and correspondence to the address stated above. This change of address should also be reflected on the official claims register for the above-referenced Case.

Very truly yours,

Ambrose Victor Regan

By: _Ambrose Victor Regan_
Name: Ambrose Victor Regan
Title: Account Holder

cc:   Alvarez & Marsal North America, LLC           Kroll
      600 Madison Avenue                            55 East 52nd Street, 17 Fl
      New York, NY 10022                            New York NY 10055
      Attn:                                         Attn: FTX Claims

page 12

KL2 3321225.3

Annex D

# POWER OF ATTORNEY

November 13, 2023

Re: FTX Trading Ltd., et al. ("Debtor"), lead Case No. 22-11068 ("Case"),
Proof of Claim Confirmation ID: 3265-70-TQVXY-390374719; Proof of Claim No.: 62556

Solely in connection with and under the conditions set forth in that certain Assignment of Claim ("Assignment"), dated as of the date hereof among Ambrose Victor Regan AND Alexander Nikolas Gierczyk ("Sellers") and **Olympus Peak Trade Claims Opportunities Fund I Non-ECI Master LP** ("Buyer"), each of the the undersigned Sellers hereby authorizes Buyer, as attorney in fact for and on behalf of each or both of the undersigned Sellers and with full power of substitution, to:

1. Demand, sue for, compromise and recover all such amounts which are, or may hereafter become, due and payable for or on account of the Claim;

2. Vote on any question that may be lawfully submitted to creditors, interest holders in the Case;

3. Attend any meetings, calls or presentations of the Debtor in the place of Seller;

4. Receive all notices, dividends and distributions or other payments in connection with the Claim and the Case; and

5. Make any changes to the My Profile and Profile sections on the Seller's FTX Account referenced in the Claim, including, but not limited to: (a) First Name, (b) Last Name, (c) Email, (d) Taxpayer ID, (e) Citizenship, (f) Address, (g) City, (h) State, (i) Country and (j) Zipcode.

6. Otherwise take any steps that it considers necessary or desirable in connection with the Assignment (including, without limitation, preparing, submitting and/or amending any proof of claim or other document substantiating or evidencing the Claim in the Case).

Buyer agrees that any actions it takes in each or both of the Sellers' name, place and stead shall fully comply with all applicable laws and regulations, including, without limitation, all the laws applicable to the Debtor.

Sellers:

Ambrose Victor Regan
By: _/s/ Ambrose Victor Regan_
Name: Ambrose Victor Regan
Title: Account Holder

Alexander Nikolas Gierczyk
By: _/s/ Alex Gierczyk_
Name: Alexander Nikolas Gierczyk
Title: Account Holder

Buyer:

Olympus Peak Trade Claims Opportunities
Fund I Non-ECI Master LP
By: Olympus Peak Asset Management LP, its
Investment Manager
By: _/s/ Leah Silverman_
Name: Leah Silverman
Title: Authorized Signatory

Annex E

**WITHDRAWALS AND DEPOSITS**

|  |  |  |  |
|---|---|---|---|
| **WITHDRAWALS** |  |  |  |
|  | Date | Type | Amount |
|  | 2022-11-09T23:02:24.628126+00:00 | USD | 16566 |
|  | 2022-11-09T22:57:44.494113+00:00 | USDT | 15824 |
|  | 2022-11-09T22:46:52.395463+00:00 | TRX | 10 |
|  | 2022-10-04T19:34:28.326503+00:00 | USDT | 9000 |
| **DEPOSITS** |  |  |  |
|  | Date | Type | Amount |
|  | 2022-11-09T22:45:46.358363+00:00 | TRX | 10 |
|  | 2022-11-07T19:49:30.927822+00:00 | USDT | 6711.71 |
|  | 2022-10-04T17:13:47.308148+00:00 | USDT | 6986.61 |
|  | 2022-09-02T10:58:42.245952+00:00 | BUSD | 6499.7 |
|  | 2022-08-17T10:43:48.298313+00:00 | USDT | 9.2 |